UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN A.S.,

     Plaintiff,

                                   Case No. 1:25-cv-604

v.

                                   Hon. Hala Y. Jarbou

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## **OPINION**

This case is an appeal of a determination by the Social Security Administration (SSA) that Plaintiff is not entitled to disability insurance benefits or supplemental security income.  Before the Court is the magistrate judge's Report and Recommendation (R&R) that the decision of the Commissioner of Social Security be affirmed.  (R&R, ECF No. 20.)  Plaintiff has filed objections (ECF No. 21).  The Court finds that the Administrative Law Judge (ALJ) failed to properly address whether the side effects caused by Plaintiff's seizure medication would limit his ability to work. Accordingly, the Court will sustain Plaintiff's objections in part, reject the R&R, reverse the ALJ's decision, and remand the case to the Commissioner.

## **I. LEGAL STANDARD**

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## II. ANALYSIS

The underlying facts of the case are detailed in the R&R and need not be repeated here. Plaintiff objects to affirmance of the ALJ's decision on three grounds: the ALJ improperly discounted evidence of Plaintiff's breakthrough seizures; the ALJ incorrectly found that Plaintiff did not meet the listing for epilepsy; and the ALJ did not properly address the side effects of Plaintiff's seizure medication.[1]  The Court disagrees with Plaintiff as to the first two grounds but agrees as to the third.

### A. Breakthrough Seizures

Plaintiff contends that the ALJ did not properly consider the opinion of his treating physician and nurse practitioner regarding his breakthrough seizures—that is, seizures occurring while on a medication that has prevented seizures for a significant time span.  The ALJ stated the following:

> The opinions of physician, Charles Asbury, D.O., are not persuasive.  On September 7, 2023, Dr. Asbury stated that the claimant was not medically cleared to return to work due to continued breakthrough grand mal seizures (Ex. 7F).

> Dr. Asbury's opinions are not persuasive because they address an issue reserved to the Commissioner of the Social Security Administration.

> The opinions of family nurse practitioner, Jeremy Kaley, are not persuasive.  On September 14, 2023, Mr. Kaley opined that the claimant was unable to perform all work duties due to frequency of breakthrough seizures even though the claimant adhered to medication regimen (Ex. 8F).  The claimant was unable to perform all light and sedentary work (*Id.*).  Mr. Kaley stated that the claimant became incapacitated during breakthrough seizures (*Id.*).  Extreme temperatures, noise, and odors could lower seizure threshold allowing for increase in seizure frequency (*Id.*).  Overall, Mr. Kaley expressly stated that the claimant was unable to perform all light and sedentary work at that time due to the severity of his seizure disorder (*Id.*).

> Mr. Kaley's opinions are inconsistent with and unsupported by the medical evidence of record. For example, although the claimant's representative asserted that the claimant adhered to prescribed medical treatment concerning epilepsy (Ex. 30E/2), the medical evidence of record illustrated some non-compliance with

---

[1] For clarity of analysis, the Court organizes these objections in a different manner than Plaintiff's brief.

prescribed epilepsy treatment (Ex. 10F/1). The claimant told the emergency department medical staff on July 2, 2023, that he skipped taking Keppra in the morning (*Id.*). On August 22, 2023, the claimant reportedly experienced three recent seizures for which he sought emergency department care and reported that at least one or two of those incidents were not related to missing doses of medication (Ex. 6F/6). The claimant's reported emergency department visits were not specified at that time (*Id.*). The claimant appeared to be in no acute distress during several medical appointments (Ex. 1F/9, 13, 2F/7, 3F/34, 49, 10F/3, and 8). Moreover, Mr. Kaley's opinions are less persuasive because those opinions addressed an issue reserved to the Commissioner of the Social Security Administration. Mr. Kaley's opinions are not supported by the opinions articulated by the state agency medical consultants (Ex. 2A/4-7 and 6A/5-7). Therefore, Mr. Kaley's opinions are not persuasive.

(ALJ Op., ECF No. 6-2, PageID.72.) The magistrate judge concluded that the ALJ did not need to address the consistency and supportability of Asbury's opinion because it was an opinion on an issue reserved for the Commissioner, and that the ALJ sufficiently addressed the consistency and supportability of Kaley's opinions.

Plaintiff objects that even if the ALJ was not required to accept expert opinions regarding issues reserved for the Commissioner—such as whether Plaintiff's seizures prevented him from working—he still should have accepted Asbury and Kaley's underlying conclusion that Plaintiff experiences breakthrough seizures. For instance, on August 22, 2023, Asbury wrote that Plaintiff "has had multiple breakthrough seizures since his last visit" and that "[a]t least one or two of these were not related to missed doses of medications." (Medical Records, ECF No. 6-12, PageID.582.) The ALJ did not determine whether this finding was consistent with or supported by medical evidence.

However, Plaintiff's objection misses the mark because the ALJ appears to have accepted that Plaintiff experiences breakthrough seizures. The ALJ noted that "[o]n August 22, 2023, the claimant reportedly experienced three recent seizures for which he sought emergency department care and reported that at least one or two of those incidents were not related to missing doses of medication." (ALJ Op., PageID.72.) And the ALJ incorporated the possibility of breakthrough

3

seizures into his determination of the Plaintiff's residual functional capacity.  For example, the ALJ noted that "given the claimant's epilepsy . . . Dr. Hahn[, a state agency medical consultant,] appropriately limited the [Plaintiff] to a light exertion level with no commercial driving and no exposure to unprotected heights."  (*Id.*)  The ALJ ultimately concluded that Plaintiff "can never climb ladders, ropes, or scaffolds . . . . can perform no work around hazards, such as unprotected heights or unguarded moving machinery," and "cannot drive commercially."  (*Id.*, PageID.68.) Because the ALJ did not discount Asbury's findings that Plaintiff sometimes experiences breakthrough seizures, his analysis of Asbury's opinion on this point does not violate the regulatory requirements.

Plaintiff also argues that the ALJ erred by not raising the issue of seizures when he questioned the vocational expert about what jobs Plaintiff could perform.  But the ALJ did not need to specifically mention seizures because the limitations imposed by those seizures were already contained within the residual functional capacity, which the vocational expert's testimony was based on.  Of course, seizures might impose additional limitations not contained within the residual functional capacity—for example, an employer might not tolerate an employee regularly missing work due to seizures.  *Cf. Johnson v. Comm'r of Soc. Sec.*, No. 1:25-cv-404, 2026 WL 1020498, at *1 (W.D. Mich. Apr. 15, 2026) (recognizing that migraine disorder may limit ability to work based on vocational expert's testimony "that more than two unexcused absences in a month would likely result in the termination of an employee").  Here, the vocational expert testified that "two or more [absences] a month" would preclude working.  (ALJ Hr'g, ECF No. 6-2, PageID.112.)  Because Plaintiff's seizures are less frequent—the evidence suggests that Plaintiff experiences a seizure every few months at most (*see* Seizure Log, ECF No. 6-7, PageID.416)— there is no reason to think his occasional absences from work would pose a significant obstacle to

employment.  *Cf., e.g.*, *Stephanie R. v. Comm'r of Soc. Sec.*, No. 3:23-cv-313, 2024 WL 1615154, at *4 (S.D. Ohio Apr. 15, 2024) ("[T]he vocational expert testified that employers typically tolerate up to . . . one unexcused absence a month.").  Thus, there was no need for the ALJ to include absenteeism in Plaintiff's residual functional capacity or in his questions to the vocational expert.  Plaintiff's objections on this point are overruled.

### B. Listed Impairment

Plaintiff also objects to the ALJ's finding that he did not meet the listed requirements for epilepsy.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02.  A claimant has epilepsy if they experience "[g]eneralized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment."  *Id.* (cleaned up).  Petitioner experienced seizures on May 11, June 15, and July 2, 2023.  (Seizure Log, PageID.416.)  However, the ALJ did not count these under § 11.02 because Asbury's notes indicated that Plaintiff was not taking his medication when at least one of these seizures took place.  (ALJ Op., PageID.72.)  The regulations state that the ALJ should "not count seizures that occur during a period when [the claimant is] not adhering to prescribed treatment without good reason."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00(H)(4)(d).  Plaintiff suggests that the side effects of dizziness and sleepiness caused by the medication (discussed at more length below) constitute a good reason for not taking it.  But there is no evidence that these side effects were so severe as to justify failing to take his medication; indeed, the fact that he continued to take the medication despite those side effects (*see* ALJ Hr'g, PageID.98) suggests the opposite.

Plaintiff also argues that financial hardship sometimes prevented him from buying his medication.  A "good reason" includes an inability "to afford prescribed treatment that [the claimant is] willing to accept, but for which no free community resources are available."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00(H)(4)(d).  However, Plaintiff does not claim to have raised this

issue with the ALJ, nor does he point to any evidence about financial hardship in the record before the ALJ.[2]  Instead, Plaintiff contends that when the ALJ decided to exclude certain seizures due to his failure to comply with the prescribed medication regimen, it was the ALJ's responsibility to inquire into whether Plaintiff had a good reason for that failure to comply.  As discussed below, the Court finds that argument unavailing.

The regulations do not specify exactly how the ALJ should proceed when evaluating seizures that occurred during lapses in medication.  But as a general matter, "[t]he plaintiff has the burden to show that her impairment meets or medically equals a listed impairment."  *Michelle B. v. Comm'r of Soc. Sec.*, No. 1:25-cv-13482, 2026 WL 988495, at *10 (E.D. Mich. Apr. 13, 2026) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 413 (6th Cir. 2011)).  To meet the requirements for epilepsy, Plaintiff must establish that he experienced three consecutive monthly seizures "despite adherence to prescribed treatment."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. Failure to adhere to treatment is thus not something that the SSA uses to rebut the Plaintiff's evidence of seizures; rather, Plaintiff must affirmatively establish that the seizures occurred while he adhered to his treatment.  And it follows that if Plaintiff attempts to rely on an exception to this rule by counting a seizure that occurred when he failed to adhere to his treatment but had a good reason to do so, he must affirmatively establish that such a good reason existed, or at the very least raise the issue before the ALJ.

---

[2] Plaintiff does point to evidence that arose after the ALJ's decision—namely, that he could not pay for his medication in August and September of 2024 due to lack of insurance. (Pl.'s Objs., ECF No. 21, PageID.694.)  But the events of 2024 do not shed much light on why Plaintiff did not take his medication in 2023.  Moreover, "the district court cannot consider new evidence submitted after the ALJ's decision."  *Howard v. Astrue*, No. CIV.A. 6:11-327, 2012 WL 4758162, at *3 (E.D. Ky. Oct. 5, 2012) (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).  It is true that "[t]he district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."  *Foster*, 279 F.3d at 357 (citing 42 U.S.C. § 405(g)).  But Plaintiff does not argue that he had good cause to not present this evidence to the ALJ.  Although obviously Plaintiff could not have presented evidence of post-proceeding events at the proceeding itself, he certainly could have presented evidence of financial hardship.  Thus, there is no basis for remand.

In short, the statutory language suggests that Plaintiff had an obligation to identify his reasons for failing to take his medication during the administrative proceeding.  Nothing in the broader regulatory context refutes that suggestion.  As to the substantive standard used to determine what qualifies as a "good reason," § 11.00(4)(d) notes that the SSA "will follow guidelines found in [their] policy, such as §§ 404.1530(c) and 416.930(c) of this chapter."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.00(4)(d).  Section 404.1530 provides that if a claimant has been prescribed a treatment by their doctor, and the claimant "do[es] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled."  20 C.F.R. § 404.1530(b).  Although § 11.00(4)(d) only references § 416.930(c)—that is, the subsection listing "[a]cceptable reasons for failure to follow prescribed treatment," which is not at issue here—it is perhaps reasonable to look to § 416.930 more broadly to determine how the agency generally treats issues involving failure to follow treatment.

It is far from clear that an ALJ applying § 416.930 has an obligation to ask a claimant why they did not adhere to their prescribed treatment.  In a 1982 ruling, the SSA stated that when a determination is made that a claimant failed to follow their prescribed treatment, "[t]he claimant . . . should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment."  SSR 82-59, 1975–1982 Soc. Sec. Rep. Serv. 793, 1982 WL 31384 (Jan. 1, 1982).  But that ruling has since been superseded by SSR 18-3p, 83 Fed. Reg. 49616, 2018 WL 4945641 (Oct. 29, 2018), which is more ambiguous.  SSR 18-3p states that once the ALJ determines that a claimant failed to follow their prescribed treatment, the ALJ will "assess whether the individual has good cause for not following the prescribed treatment."  *Id.* at 49618.  The claimant "has the burden to provide evidence showing that he or she has good cause for failing to follow prescribed treatment."  *Id.*  "If evidence [the ALJ] already ha[s] in a claim is insufficient to

7

make the required assessment(s) in the failure to follow prescribed treatment determination, [the ALJ] *may* develop the evidence," which "*could* include contacting the . . . individual to ask why he or she did not follow the prescribed treatment." *Id.* at 49619 (emphasis added). This ruling does not support the view that the ALJ has a duty to ask the claimant why they did not follow their prescribed treatment; the ALJ *may* do so if they have insufficient evidence, but the claimant has the ultimate burden to establish a good reason. Thus, SSR 18-3p is consistent with the view that the ALJ may find that no good reason existed where the claimant fails to affirmatively state a reason and the evidence does not support one.

Moreover, even if SSR 18-3p requires the ALJ to affirmatively ask a claimant about their reasons for missing their medication under § 416.930, it is not clear that that requirement applies in this context. As another court noted, "the interplay between the relevant Listing (11.02) and SSR 18-3p (Failure to Follow Prescribed Treatment) is 'legally unclear.'" *Kellilea F. v. Kijakazi*, No. CV 21-00410, 2022 WL 2128625, at *6 (D.R.I. June 14, 2022). Section 416.930 and SSR 18-3p apply when the claimant has been determined to be disabled and the ALJ must decide if they are nonetheless ineligible for benefits due to a failure to follow prescribed treatment. Where the ALJ must affirmatively find that the claimant failed to follow their prescribed treatment without good reason, there is a stronger case for requiring the ALJ to ask the claimant why they did not follow their treatment before finding that § 416.930 applies. The situation is different when § 11.02 is at issue because, as noted above, the epilepsy listing requires the claimant to identify seizures that occurred while they complied with their prescribed treatment. In that context, it makes sense that if the claimant seeks to rely on seizures that occurred when they *failed* to take their medication, they must provide a good reason for that failure.

In sum, the ALJ had no obligation to address possible good reasons for Plaintiff's failure to adhere to his prescribed treatment where the Plaintiff did not assert any reasons and none were apparent from the record.  Plaintiff's objection on this point is overruled.

**C. Side Effects**

Plaintiff argues that the ALJ failed to incorporate the side effects caused by his seizure medication when determining what jobs Plaintiff could perform.  Dr. Asbury found that after Plaintiff's epilepsy medication was increased in response to breakthrough seizures, Plaintiff experienced "intolerable side effects including sedation and dizziness."  (Medical Records, PageID.585.)  Plaintiff also testified at the ALJ hearing that his medication made him feel "[d]rowsy and dizzy," that it caused him to nap during the day, and that he would sometimes "doze off without even trying to." (ALJ Hr'g, PageID.98.)  The ALJ does not appear to have considered this issue in making his determination as to Plaintiff's residual functional capacity.  The ALJ did ask the vocational expert whether an employer would tolerate an employee taking "two random 30-minute breaks" each day—perhaps to account for Plaintiff needing naps to address the drowsiness—and the expert testified that such a limitation "would be work preclusive."  (*Id.*, PageID.112.)  But the ALJ did not include any break-related limitation in Plaintiff's residual functional capacity or address the vocational expert's conclusion on this matter.  Perhaps reasons exist to discount these reported side effects, but such reasons are not clear from the record or the ALJ's opinion.  "[T]his Court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'"  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).  Because no such bridge exists, the Court will sustain Plaintiff's objection on this point and remand the case for the Commissioner to address this issue.

### III. CONCLUSION

The ALJ erred in failing to consider whether the side effects of Plaintiff's seizure medication impact his residual functional capacity.  Accordingly, the Court will reverse the decision of the ALJ and remand the case to the Commissioner.

An order and judgment shall issue in accordance with this Opinion.


Dated: May 26, 2026                                     /s/ Hala Y. Jarbou
                                                                      HALA Y. JARBOU
                                                                      CHIEF UNITED STATES DISTRICT JUDGE